| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL XI | | |
| CARIBBEAN PRODUCE EXCHANGE, LLC<br><br>Recurrente<br><br>v.<br><br>LUMA ENERGY SERVCO, LLC;<br>AUTORIDAD DE ENERGÍA ELÉCTRICA<br><br>Recurridos | KLRA202300418 | *CERTIORARI*<br>Procedente de la Junta Reglamentadora de Servicio Público, Negociado de Energía de Puerto Rico<br><br>Caso Núm.:<br>NEPR-QR-2022-0018<br><br>Sobre: Resolución Final y Orden de Querella sobre Revisión Formal de Factura |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero 2024.

Comparece ante nos Carribean Produce Exchange, LLC ("Caribbean" o "Recurrente") mediante un *Recurso de Revisión Administrativa* presentado el 11 de agosto de 2023. Nos solicita que revoquemos la *Resolución* emitida el 12 de julio de 2023, notificada al próximo día, por el Negociado de Energía de Puerto Rico ("Negociado"). En el referido dictamen, el Negociado desestimó la reclamación presentada por Caribbean bajo el fundamento de falta de jurisdicción.

Por los fundamentos expuestos a continuación, **confirmamos** la *Resolución* recurrida.

## I.

Los hechos que inician la presente controversia se remontan al año 2006, cuando la parte Recurrente comenzó a objetar unas facturas emitidas por la Autoridad de Energía Eléctrica ("AEE")

Número Identificador

SEN(RES)2023_____

sobre un edificio comercial de su pertenencia, las cuales alegó que eran excesivas.

Posteriormente, el 21 de agosto de 2020, Caribbean cursó una carta a la AEE a los fines de objetar sus facturas de servicio energético, por unos alegados atrasos ascendentes a la cantidad de $279,285.30.[1] En ésta, señaló que en el año 2006 impugnó su factura formalmente al amparo de la *Ley para Establecer Requisitos Procesales Mínimos para la Suspensión de Servicios Públicos Esenciales,* Ley Núm. 33 de 27 de junio de 1985, según enmendada, 27 LPRA sec. 262, ("Ley Núm. 33-1985"). Alegó que recibió el ajuste correspondiente al periodo de diciembre de 2004 a agosto de 2006 y se celebró una vista administrativa como parte del proceso de objeciones de dicho periodo. No obstante, sostuvo que la AEE nunca le notificó su determinación final sobre el asunto en controversia, por lo que infirió que la agencia había acogido sus objeciones. Por tanto, argumentó que dieciséis (16) años después no podía recobrarle una deuda de dicho periodo.

Transcurridos varios meses y luego de varias cartas emitidas por Caribbean a la agencia, el 12 de noviembre de 2021, un representante de LUMA Energy Servco, LLC. ("LUMA"), le informó vía correo electrónico que procedía a referir su caso al Departamento de *Billing* y Objeciones.[2] Posteriormente, Caribbean continuó remitiendo correos electrónicos a la compañía de servicio energético. En éstas, aludió nuevamente a unas objeciones de facturas desde el 2006.

Al respecto, el 8 de febrero de 2022, el señor Carlos A. Otero Ortega, en representación de LUMA, le remitió un correo electrónico a la representación legal de Caribbean, en donde solicitó coordinar

---

[1] Apéndice del *Recurso de Revisión Administrativa,* pág. 70.

[2] Apéndice del *Recurso de Revisión Administrativa,* pág. 83.

una reunión para atender en detalle los reclamos presentados.[3] Añadió que **"[l]a reunión sería de carácter informativa para entender la situación del mismo".** En respuesta, Caribbean indicó mediante carta que el 12 de octubre de 2021 sostuvo una reunión presencial con el señor Waldemar Figueroa de LUMA, donde se le proveyó el trasfondo fáctico de las objeciones. Añadió que, a dicha fecha, lo que procedía en derecho es realizar el ajuste correspondiente y eliminar los cargos. No obstante, procedió a informar dos fechas hábiles para la reunión.

En vista de que no se habían atendido las objeciones de Caribbean, el 25 de marzo de 2022, presentó ante el Negociado de Energía de Puerto Rico ("Negociado") de la Junta Reglamentadora de Servicio Público de Puerto Rico un *Recurso en Solicitud de Orden para Obligar a Compañía de Servicio Eléctrico Hacer los Ajustes Correspondientes en Factura Objetada* en contra de LUMA y AEE.[4] En esencia, señaló que el 12 de octubre de 2021, un representante de LUMA le notificó que su reclamación sería investigada y referida a los departamentos correspondientes, sin embargo, alega que la agencia nunca emitió una resolución final. Reiteró que desde el 2006 había solicitado el ajuste de factura. Señaló, además, que la agencia incumplió con su deber ministerial por no haber concluido la investigación ni haber notificado resolución dentro del término de sesenta (60) días a tenor con la *Ley de Transformación y ALIVIO Energético,* Ley Núm. 57 de 27 de mayo de 2014, 22 LPRA sec. 1051 *et seq.* ("Ley Núm. 57-2014").

Transcurridos varios trámites procesales, el 20 de mayo de 2022, LUMA presentó una *Moción de Desestimación por Falta de Legitimación Activa.*[5] En dicha solicitud, advirtió que Caribbean

---

[3] Apéndice del *Recurso de Revisión Administrativa,* pág. 89.

[4] Apéndice del *Recurso de Revisión Administrativa,* págs.1-7.

[5] Apéndice del *Recurso de Revisión Administrativa,* págs. 109-114.

incumplió con el procedimiento informal de treinta (30) días para objetar su factura, de conformidad a la precitada Ley Núm. 57-2014, *supra*. Por consiguiente, peticionó la desestimación del recurso administrativo bajo el fundamento de que el Negociado carecía de jurisdicción para atender los reclamos de Caribbean. En su defecto, señaló que la causa de acción en su contra debía ser desestimada, toda vez que las alegaciones contenidas en el recurso versaban sobre actuaciones de la AEE.

Por su parte, el 27 de mayo de 2022, Caribbean sometió su *Oposición a "Moción de Desestimación por Falta de Legitimación Activa" y Otros Extremos.*[6] En este documento, arguyó que no procedía la solicitud de desestimación, pues desde el 2006 había levantado una serie de objeciones ante la agencia sin obtener remedio alguno.

El 18 de octubre de 2022, el Negociado celebró una vista argumentativa sobre la controversia relacionada con la desestimación por falta de legitimación activa ante el oficial examinador designado por la agencia. Tras evaluar las posturas de ambas partes, el 12 de julio de 2023, el Negociado emitió la *Resolución* recurrida declarando *Ha Lugar* la solicitud de desestimación presentada por Luma y AEE. En lo concerniente, formuló las siguientes determinaciones de hechos:

1. El 25 de marzo de 2022, la parte Querellante, presentó ante el Negociado de Energía una Querella contra la LUMA Energy, LLC y la Autoridad de Energía Eléctrica, la cual dio inicio al caso de epígrafe.

2. La parte Querellante, alegó en el recurso presentado facturación incorrecta, errática y excesiva por parte de la Autoridad, ahora LUMA, bajo las disposiciones de la Ley Núm. 57-2014 y el Reglamento Núm. 8863.

3. La parte Querellante alega que los hechos ocurrieron en el año 2006 cuando la Autoridad aparentemente envió facturas estimadas y luego una factura de ajuste ya que se alegaba habían facturado de menos por 24 meses.

---

[6] Apéndice del *Recurso de Revisión Administrativa,* pág. 115-118.

4. La parte Querellante además sostiene que LUMA ahora está haciendo intentos de cobro de dicho balance adeudado desde aproximadamente el año 2006.

5. La presente controversia comenzó hace más de 16 años, allá para el año 2006, cuando las objeciones de factura se regían por la Ley 33-1985.

6. En esencia la alegación de LUMA es que el Negociado carece de jurisdicción sobre la materia con relación a las objeciones de facturas del año 2006, debido a que tanto el Art. 6.27(a)(1) de la Ley 57-2014 como la Sección 2.02 del Reglamento 8863, establecen que cada factura deberá ser objetada individualmente, dentro del periodo de treinta (30) días de la fecha de su emisión, y mediante los mecanismos establecidos por la Compañía de Servicio Eléctrico correspondiente. Así mismo, deben agotarse los respectivos remedios informales previo a acudir ante este Negociado, mediante la presentación de reclamaciones independientes por cada una de las facturas.

7. Surge claramente del expediente del caso y el proceso ante el Negociado que el Querellante entre los años 2007-2010 litigó esta controversia, que nos presenta en su Querella, ante la Autoridad. Al punto que hubo una Vista Administrativa en el año 2010 de la cual se alega jamás se recibió la resolución o determinación final; dejando la parte Querellante el tema latente por más de 10 años hasta la presentación de esta Querella.

En esencia, el Negociado resolvió que la Ley 57-2014, *supra,* le confirió jurisdicción para atender controversias relacionadas a facturas de la AEE. No obstante, carecía de jurisdicción para resolver objeciones de facturas del 2006, puesto que Caribbean no podía re litigar o reabrir una controversia luego de 16 años. Determinó que, si un Juez Administrativo no emitió una determinación final en el 2010, Caribbean tenía remedios de conformidad con la Ley Núm. 33-1985, *supra* y otras aplicables, como acudir al Tribunal de Primera Instancia, lo cual no hizo. Por lo cual, el Negociado no tenía jurisdicción sobre la materia para atender hechos que ocurrieron hace más de 16 años. En consecuencia, desestimó sin perjuicio la querella.

Inconforme con el dictamen administrativo, el 11 de agosto de 2023, Caribbean acudió ante nos mediante un *Recurso de Revisión Administrativa.* En esencia, planteó el siguiente señalamiento de error:

Erró en derecho y abusó en su discreción el Negociado de Energía, al declararse sin "jurisdicción sobre la materia", y desestimar el recurso de la recurrente,

privándole del remedio automático establecido categóricamente en el Artículo 6.27 de la Ley de Transformación y Alivio Energético, y la Sección 4.11 del Reglamento Núm. 8863.

Por su parte, el 20 de septiembre de 2023, LUMA compareció ante nos mediante un escrito intitulado *Alegato de la Parte Recurrida.*

Contando con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.
### A. Revisión administrativa

Las determinaciones administrativas están sujetas al proceso de revisión judicial ante el Tribunal de Apelaciones. Artículo 4.006 de la Ley de la Judicatura, Ley Núm. 201-2003, 4 LPRA sec. 24y; *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018). La Sección 4.6 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9676, ("LPAU"), faculta al tribunal intermedio a revisar decisiones, órdenes y resoluciones finales de organismos administrativos. Ahora bien, el proceso de revisión judicial está limitado a determinar: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hechos de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas. *Asoc. FCIAS. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Véase, también, *Mun. de San Juan v. J.C.A.* 149 DPR 263, 279 (1999). Los tribunales apelativos debemos sostener los dictámenes agenciales a menos que la presunción de legalidad haya sido superada. *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).

Las determinaciones administrativas se sostendrán siempre y cuando estén fundamentadas en evidencia sustancial que obre del expediente. Sección 4.5 de la LPAU, *supra*, 3 LPRA sec. 9675. La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012); *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 512 (2011). En ese sentido, "la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables". *OEG v. Martínez Giraud, supra*, pág. 89.

Por otro lado, "**cuando de conclusiones de derecho se trata, los tribunales tenemos una amplia facultad de revisarlas completa y absolutamente".** *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997). La Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos". Solo intervendremos cuando la actuación administrativa resulte arbitraria, ilegal o irrazonable. *Capó Cruz v. Jta. Planificación et al., supra,* pág. 592. Lo anterior "no equivale a la sustitución automática del criterio e interpretación del organismo administrativo". *Íd.,* pág. 591; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). La determinación de una agencia merece deferencia sustancial aun cuando su interpretación no sea la única razonable. *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1003 (2011).

#### B. Jurisdicción en casos ante organismos administrativos

En nuestro ordenamiento jurídico, "la jurisdicción es el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir casos o controversias con efecto vinculante

para las partes". *Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico y otros*, 212 DPR __ (2023), 2023 TSPR 105 resuelto el 1 de septiembre de 2023; *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021). Una agencia administrativa no puede asumir jurisdicción sobre situación alguna que no esté autorizada por ley. *Raimundi v. Productora*, 162 DPR 215, 225 (2004). Si un ente administrativo no tiene jurisdicción para adjudicar controversia, su actuación es *ultra vires*. *AAA v. UIA*, *supra*, pág. 916. De hecho, "cualquier duda en cuanto a la existencia de dicho poder debe resolverse en contra de su ejercicio". *Raimundi v. Productora, supra.*

### C. *Doctrina de Agotamiento de Remedios*

La doctrina de agotamiento de los remedios administrativos requiere que los casos ante el foro agencial culminen previo a acudir al foro judicial. *Acevedo v. Mun. de Aguadilla*, 153 DPR 788 (2001). Este principio "procura que cuando una parte desea obtener un remedio en una agencia, dicha parte tiene el deber de utilizar todas las vías administrativas a su alcance para ello antes de recurrir al foro judicial". *Guzmán y otros v. E.L.A.*, 156 DPR 693, 711 (2002); *Mun. de Caguas v. AT & T*, 154 DPR 401 (2001).

Ahora bien, ciertas circunstancias permiten prescindir del procedimiento de agotamiento de remedios en las agencias. La Sección 4.3 de la LPAU, *supra*, dispone lo siguiente:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673.

No obstante, en ausencia de tales criterios, "el foro judicial debe abstenerse hasta que concluyan los trámites administrativos".

*Acevedo v. Mun. de Aguadilla, supra, pág.* 802. Esta norma evita que "se obvie el procedimiento de revisión interna de la agencia a fin de acelerar la revisión judicial". *Mun. de Caguas v. AT & T, supra,* pág. 407. Tal proceder permite que la determinación recurrida refleje la posición final de la entidad administrativa. *Acevedo v. Mun. de Aguadilla, supra,* pág. 802.

### D. Jurisdicción del Negociado de Energía Eléctrica en casos de revisión de facturas de servicio energético

El Artículo 1.2 (p) de la *Ley de Transformación y ALIVIO Energético,* Ley Núm. 57 de 27 de mayo de 2014, según enmendada, 22 LPRA sec. 1051(p), ("Ley Núm. 57-2014"), declara como política pública del Estado Libre Asociado de Puerto Rico que "[l]as disputas sobre facturas o servicios de electricidad se tramitarán de forma equitativa y diligente". A esos fines, la precitada Ley reconoce la facultad de una entidad reguladora para la revisión de tarifas relacionadas con el servicio energético:

> (p) Habrá un ente independiente regulador de energía, que tendrá amplios poderes y deberes para asegurar el cumplimiento con la política pública energética, las disposiciones y mandatos de esta Ley, y **para asegurar costos energéticos justos y razonables mediante la fiscalización y revisión de las tarifas de la Autoridad de Energía Eléctrica y de cualquier compañía de servicio eléctrico.** (Énfasis nuestro). Artículo 1.2 (r) de la Ley Núm. 57-2014, *supra,* 22 LPRA sec. 1051(r).

Cónsono con lo anterior, el Artículo 6.3 de la precitada Ley delimita los poderes del Negociado de Energía de Puerto Rico. El aludido precepto dispone que el Negociado ostenta la facultad para revisar determinaciones procedentes de compañías proveedoras de servicio de electricidad:

> (rr) **Revisar decisiones finales de las compañías de energía con respecto a querellas y solicitudes de investigación de sus clientes.**
>
> […].
>
> El NEPR aquí creado tendrá, además de los poderes enumerados en esta Ley, todos los poderes adicionales implícitos e incidentales que sean apropiados y necesarios para efectuar y llevar a cabo, desempeñar y ejercitar todos los poderes antes mencionados y para

alcanzar los propósitos de esta Ley. 22 LPRA sec. 1054b(rr). (Énfasis nuestro).

El Artículo 6.4(a)(2) de la precitada Ley preceptúa que la agencia tendrá jurisdicción primaria exclusiva sobre los siguientes asuntos:

> (2) Los casos y controversias relacionados con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica. 22 LPRA sec. 1054c(a)(2).

De igual modo, el Artículo 6.4(b)(1) prescribe que posee jurisdicción general sobre el siguiente aspecto:

> (1) El Negociado de Energía tendrá jurisdicción regulatoria investigativa y adjudicativa sobre la Autoridad y cualquier otra compañía de energía certificada que rinda servicios dentro del Gobierno de Puerto Rico. 22 LPRA sec. 1054c(b)(1).

### E. Trámite administrativo para objetar factura por servicio energético ante la compañía de energía eléctrica

El Artículo 6.27(a) de la Ley Núm. 57-2014, *supra*, fija los requisitos para que un cliente presente su objeción a sus facturas de servicio de energía eléctrica, disponiendo lo siguiente:

> (a) **Antes de acudir al Negociado de Energía para solicitar una revisión de factura de servicio eléctrico, toda persona deberá agotar, ante la compañía de energía certificada que le cobró dicha factura, el procedimiento administrativo informal que se establece en este Artículo y en los reglamentos que adopte el Negociado de Energía.** En este proceso administrativo informal no aplicarán las disposiciones del Capítulo III de la Ley 38-2017, según enmendada, de la Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".
>
> > (1) Todo cliente podrá objetar o impugnar cualquier cargo, clasificación errónea de tipo de tarifa, cálculo matemático o ajuste de la factura de servicio eléctrico y solicitar una investigación por parte de la compañía de energía certificada **dentro de un término de treinta (30) días a partir de la fecha en que dicha factura sea depositada en el correo postal o sea enviada al cliente vía correo electrónico.**
>
> […].
>
> **Para poder objetar la factura y solicitar la correspondiente investigación, la persona deberá pagar la cantidad correspondiente al**

> **promedio de las facturas no disputadas durante los últimos seis (6) meses.** La compañía de energía certificada no vendrá obligada a iniciar la investigación hasta que la cantidad indicada haya sido pagada.
>
> (2) La persona podrá notificar su objeción y solicitud de investigación de su factura a la compañía de energía certificada **mediante correo certificado, teléfono, fax o correo electrónico, siempre que dicha objeción y solicitud se someta a través de los contactos específicos provistos para esos propósitos por la compañía de energía certificada y se pueda establecer con certeza la fecha del envío de la objeción y solicitud de investigación.** (Énfasis y subrayado nuestro). 22 LPRA sec. 1054z (a)(1).[7]

---

[7] Cabe destacar que la Ley Núm. 33-185, *supra*, disponía un procedimiento para objetar las facturas del servicio de energía eléctrica, estableciendo lo siguiente:

> Toda autoridad, corporación pública u otra instrumentalidad gubernamental que provea servicios esenciales a la ciudadanía dispondrá un procedimiento administrativo para la suspensión del servicio por falta de pago que deberá ajustarse para conceder los mecanismos y garantías mínimas al abonado, conforme al procedimiento dispuesto a continuación:
>
> (a) A partir del envío de una factura de cobro por concepto de pagos de tarifas, derechos, rentas, u otros cargos facturados, por servicios esenciales, el abonado tendrá veinte (20) días para **pagar u objetar y solicitar una investigación** de la misma ante el funcionario designado en la oficina local donde ubica la estructura que recibe servicio, quien estará facultado para corregir errores o sobrecargos. **La objeción y solicitud de investigación podrá solicitarse mediante correo, teléfono, fax o Internet, siempre y cuando la misma se someta a través de las direcciones y/o números específicos provistos por la Autoridad de Energía Eléctrica de Puerto Rico** o la Autoridad de Acueductos y Alcantarillados, según corresponda, para estos propósitos.
>
> (b) La instrumentalidad deberá concluir la investigación e informarle el resultado de la misma al abonado dentro de los sesenta (60) días de la objeción original, y en aquellos casos en que se requiera un tiempo adicional la instrumentalidad, si así lo determinara, lo hará según lo dispuesto en la Ley Núm. 170 del 12 de agosto de 1988. **El resultado de la investigación se le notificará al abonado por escrito** quien, si el resultado de la investigación le es adverso, tendrá diez (10) días a partir de la notificación para pagar la factura o para objetar la decisión del funcionario de la Oficina local ante otro funcionario designado representante de la región o distrito en que el usuario recibe el servicio, quien tendrá veinte (20) días a partir de la fecha de objeción para resolver tal solicitud.
>
> (c) **La decisión del funcionario de la región o distrito se le notificará por escrito al abonado,** quien, si la decisión le es adversa, tendrá diez (10) días a partir de la notificación para pagar o solicitar una revisión de esa decisión y vista ante el director ejecutivo de la autoridad concernida.
>
> (d) [...].
>
> (e) Si el abonado solicita la revisión y vista administrativa dispuesta en el inciso (c) anterior, deberá pagar, previo a la celebración de la vista, una cantidad igual al promedio de la facturación de consumo mensual o bimensual, según fuere el caso, tomándose como base el historial de consumo del abonado durante los 12 meses precedentes. [...].
>
> (f) [...].
>
> (g) [...].

A su vez, el *Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico por Falta de Pago* de la Comisión de Energía de Puerto Rico, Reglamento Núm. 8863 de 1 de diciembre de 2016 ("Reglamento de Revisión"),[8] dispone del trámite para objetar una factura de luz, estableciendo lo siguiente:

1. El nombre del Cliente que presenta la objeción;
2. El número de cuenta de servicio;
3. El número de identificación de la Factura que se objeta;
4. Las razones que motivan la objeción;
5. Su número de teléfono, dirección física y postal, y dirección de correo electrónico;
6. Copia del recibo de pago del promedio de las Facturas conforme a lo establecido en la Sección 4.05 de este Reglamento. Si el cliente presentare su objeción por teléfono, deberá ofrece el número de confirmación del recibo del pago.

**<u>Toda objeción de Factura que no cumpla con lo dispuesto en esta Sección se tratará como si nunca hubiese sido presentada y no tendrá efecto jurídico alguno.</u>** (Énfasis y subrayado nuestro). Sección 4.07 del Reglamento de Revisión, *supra.*

Completado cabalmente el trámite de objeción informal, la compañía de servicio energético estará en posición para iniciar el proceso investigativo o adjudicativo de conformidad a las siguientes consideraciones:

(3) Una vez notificada la objeción y depositada la cantidad correspondiente, la compañía de energía certificada deberá iniciar la investigación o el proceso adjudicativo que proceda dentro del término de treinta (30) días, contados a partir de la fecha en que el cliente notificó su objeción. En caso de que la compañía de energía certificada no inicie el proceso dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente. La compañía de energía certificada

---

(h) **El abonado tendrá veinte (20) días a partir de la notificación de la decisión del examinador o árbitro para recurrir en revisión al Tribunal de Primera Instancia de Puerto Rico** conforme a las disposiciones de la Ley Núm. 11 del 24 de julio de 1952, según enmendada, y a las Reglas Aplicables a los Recursos para la Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia. El tribunal revisará la decisión del examinador a base del récord administrativo y sólo en cuanto a las conclusiones de derecho; las determinaciones de hecho serán concluyentes para el tribunal si están sostenidas por evidencia sustancial. 27 LPRA sec. 262b. (Énfasis nuestro).

[8] La *Ley de Ejecución del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico*, Ley Núm. 211-2018, establece que toda ley que se refiera a la Comisión o Comisión de Energía de Puerto Rico se entenderá que se refiere, respectivamente, al Negociado de Energía.

deberá concluir la investigación o proceso administrativo, emitir la correspondiente resolución e informar al cliente el resultado dentro de un término de sesenta (60) días contados a partir de la fecha de comienzo de la investigación o proceso adjudicativo. Si la compañía de energía certificada no emite la referida resolución o no informa al cliente de la misma dentro del término de sesenta (60) días, la objeción será adjudicada a favor del cliente. 22 LPRA sec. 1054z(a)(3).

### F. Agotamiento de remedios previo a acudir al Negociado de Energía de Puerto Rico

El cliente debe agotar los remedios internos que provea la compañía de servicio energético antes de acudir al Negociado.  En esa dirección, el Artículo 6.27(a) de la Ley Núm. 57-2014, *supra,* preceptúa el procedimiento a seguir:

> **(a) Antes de acudir al Negociado de Energía para solicitar una revisión de factura de servicio eléctrico, toda persona deberá agotar, ante la compañía de energía certificada que le cobró dicha factura, el procedimiento administrativo informal que se establece en este Artículo y en los reglamentos que adopte el Negociado de Energía.** (Énfasis nuestro). 22 LPRA sec. 1054z(a).

El Artículo 6.27(d) de la aludida Ley prescribe ese requisito de la siguiente manera:

> **(d) Al presentar su querella ante la Comisión el cliente querellante deberá demostrar que ha cumplido con los requisitos establecidos en este Artículo. De la misma manera, la compañía de servicio eléctrico querellada deberá establecer en su primera comparecencia ante la Comisión que han cumplido fielmente con los requisitos establecidos en este Artículo**. 22 LPRA sec. 1054z (d).

De igual forma, la Sección 2.02 del Reglamento de Revisión, *supra*, establece el requisito de agotamiento de remedios:

> **Todo cliente deberá agotar, <u>ante la Compañía de Servicio Eléctrico</u>, el Procedimiento Administrativo Informal de Objeción de Facturas establecidos en este Reglamento <u>previo a solicitar una revisión formal de cualquier objeción por parte de la Comisión de Energía.</u>** Mediante este Procedimiento Administrativo Informal, el Cliente explicará los fundamentos de su objeción a la Compañía de Servicio Eléctrico e intentará alcanzar una solución al asunto directamente con la compañía. (Énfasis y subrayado nuestro).

Cabe destacar que, el cliente ostenta el derecho de solicitar reconsideración ante la compañía de servicio energético, según dispone el Artículo 6.27(a)(4) y (5) de la Ley Núm. 57-2014, *supra*:

(4) Si el cliente no está conforme con el resultado de la investigación de la compañía de servicio eléctrico, deberá solicitar por escrito a dicha compañía la reconsideración de esa decisión inicial por parte de un funcionario de mayor jerarquía. Toda solicitud de reconsideración deberá presentarse dentro del término de veinte (20) días contados a partir de la notificación de la decisión de la compañía de servicio eléctrico sobre el resultado de la investigación. El cliente podrá presentar y notificar su solicitud de reconsideración a la compañía de servicio eléctrico mediante correo certificado, fax o correo electrónico, siempre y cuando ésta se someta a través de los contactos específicos provistos por la compañía para estos propósitos.

(5) La compañía de energía certificada tendrá un término de treinta (30) días a partir de la presentación de la solicitud de reconsideración para evaluarla y notificar por escrito al solicitante su determinación final sobre el resultado de la investigación. Si la compañía de energía certificada no emite la referida notificación por escrito dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente. Toda determinación final deberá exponer claramente por escrito que el cliente tendrá derecho de presentar un recurso de revisión ante la Comisión y una breve descripción de cómo presentar tal recurso. 22 LPRA sec. 1054z (a) (4-5).

Agotados los remedios descritos, el cliente tendrá legitimación activa para acudir al Negociado, según dispone la Sección 5.1. del Reglamento de Revisión, *supra*, estableciéndolo siguiente:

Todo Cliente que no esté conforme con la decisión final de la Compañía de Servicio Eléctrico referente a una querella o una objeción de Factura podrá iniciar un procedimiento formal de revisión ante la Comisión de Energía dentro del término de treinta (30) días, contados a partir de la fecha de notificación de decisión final. **Al presentar su solicitud de revisión, el querellante deberá demostrar que ha cumplido fielmente con los requisitos establecidos en el Artículo 6.27 de la Ley 57-2014 y en este Reglamento**. (Énfasis nuestro).

De exhibir tales criterios, el Negociado tendrá la facultad para revisar la determinación de la compañía de servicio energético del siguiente modo:

(e) La Comisión revisará de *novo* la decisión final de la compañía de energía certificada sobre la objeción y el resultado de la investigación. 22 LPRA sec. 1054*z*(e).

**II.**

En el presente recurso, la parte Recurrente nos alega que erró el Negociado al desestimar su recurso por falta jurisdicción. En específico, contiende que el Negociado fundamentó su determinación en meras alegaciones sin identificar si existía o no una determinación final por parte de la compañía de servicio de energía eléctrica. Por lo anterior, argumenta que el Negociado tiene ampla facultad para atender su reclamo.

Por su parte, LUMA arguye que Caribbean pretende objetar la totalidad de sus balances adeudados a través del proceso de objeción. No obstante, plantea que Caribbean debió cumplir con los requisitos contenidos en la Ley Núm. 57-2014, *supra.* De conformidad con lo anterior, sostiene que cada factura debió objetarse individualmente dentro del término de treinta (30) días desde la fecha de su emisión.

En el presente caso, nos corresponde determinar si el Negociado actuó correctamente al desestimar el recurso administrativo por concluir que carecía de jurisdicción.

Como foro revisor, al evaluar un dictamen administrativo, nuestro quehacer judicial se limita a determinar si existe una base racional respaldada en evidencia sustancial que fundamente la determinación o interpretación impugnada. En ese sentido, los foros apelativos solo intervendremos si las determinaciones de hechos no están basadas en evidencia que obre en el expediente o cuando las conclusiones resultan irrazonables. *OEG v. Martínez Giraud, supra.* Tomando en cuenta la doctrina de limitación judicial, somos del criterio que en este caso procede conferirle deferencia a las determinaciones de hechos formuladas por el Negociado. Veamos.

Tras revisar la totalidad del expediente administrativo, notamos que el Recurrente comenzó a realizar una serie de objeciones a su factura del servicio de energía eléctrica desde el 2006. En dicho periodo el procedimiento sobre las objeciones a los servicios públicos esenciales estaba regulado por la Ley Núm. 33-1985, *supra,* por lo que el proceso de objeción debía cumplir con los requisitos allí dispuestos. Según nos alega la parte Recurrente, dichas facturas fueron objeto de litigación por varios años, inclusive nos advierte que el 2010 se celebró una vista administrativa. Sin embargo, el Recurrente señala que la agencia no emitió una determinación final, por lo que asumió que había resuelto sus reclamos a su favor.

Las cartas que obran en el expediente administrativo evidencian que el Recurrente realizó unas objeciones sobre la facturación del servicio de energía eléctrica, en las cuales alega que la lectura era una estimada. Aun cuando algunas de las comunicaciones enviadas por Caribbean a la compañía de servicio energético hacen referencia al periodo que comprende la objeción, no existe evidencia de que la agencia inició una investigación formal sobre las objeciones y se completó el trámite administrativo. El Recurrente sostiene que en 2010 la agencia realizó una vista administrativa, pero no presenta evidencia sobre si se dilucidaron las controversias relacionadas a las objeciones u otros planteamientos de derecho. Tampoco podemos deducir del expediente que el hecho de que la agencia no emitió determinación final sobre los reclamos del Recurrente dio a lugar a que estas fueron resueltas a su favor. Ante las dudas del Recurrente sobre si la agencia acogió o no sus reclamos, dicha parte no podía cruzarse de brazos y debió acudir al foro judicial a dilucidar sus planteamientos.

Además, es meritorio destacar que mediante la Ley Núm. 57-2014, *supra,* se creó el Negociado y le confirió la facultad

a dicha entidad para revisar las decisiones **finales** de las compañías de energía con respecto a las querellas y solicitudes de investigación de sus clientes. Véase 22 LPRA sec. 1054 (rr). La precitada Ley estableció una serie de requisitos que tendrá que cumplir cualquier cliente que quiera objetar las facturas de servicio eléctrico, estableciendo que *"[a]ntes de acudir al Negociado de Energía para solicitar una revisión de factura de servicio eléctrico, toda persona deberá agotar, ante la compañía de energía certificada que le cobró dicha factura, el procedimiento administrativo informal que se establece en este Artículo y en los reglamentos que adopte el Negociado de Energía"*. 22 LPRA sec. 1054z (a).

En el presente caso, el Recurrente arguye que la compañía de servicio eléctrico le ha requerido el cobro unas cuantías en concepto de atrasos que corresponden a facturas que datan del 2006. Del expediente surgen unas cartas emitidas por el Recurrente a la AEE que pretendían ser objeciones formales a las facturas de los años 2006, 2007 y 2008.[9] Las otras cartas y correos electrónicos que se incluyeron como anejos del expediente corresponden a los años 2020, 2021 y 2022. Sin embargo, en el expediente no se incluyeron facturas del periodo de años que comprende del 2008 al 2019. Por lo cual, es forzoso concluir que el Recurrente no puso en posición a la agencia para dilucidar sus reclamos de que el cobro de atrasos de las facturas desde 2020 corresponden a las facturas objetadas desde el 2006. Por lo cual, coincidimos con el Negociado que no ostenta jurisdicción para dilucidar los méritos de los reclamos del Recurrente, con respecto a las facturas del periodo de 2006 al 2008. A su vez, reiteramos que el Recurrente debió haber iniciado un proceso judicial desde que se celebró la alegada vista administrativa

---

[9] Apéndice del *Recurso de Revisión Administrativa,* págs. 8-67.

en 2010, a los fines de que se obligara a la agencia a emitir una determinación final con respecto a sus reclamos.

En vista de lo anterior, el dictamen agencial merece nuestra deferencia. La *Resolución* recurrida no es arbitraria, irrazonable ni caprichosa. La aludida determinación agencial es cónsona los preceptos legales aplicables y está respaldada en evidencia sustancial que obra del expediente.

**IV.**

Por los fundamentos expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones